IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SUCCESS JUMBO, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:16-CV-702-WKW |
| | ) | [WO] |
| ALABAMA STATE UNIVERSITY, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Before the court is the Rule 12(b)(6) motion to dismiss filed by Defendant Alabama State University ("ASU," "Alabama State," or the "University"). (Doc. # 9.) Because Plaintiffs' complaint (Doc. # 1) alleges facts sufficient to state each of their claims, the motion is due to be denied.

## **I. JURISDICTION AND VENUE**

The court exercises subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. The parties do not contest personal jurisdiction or venue.

## **II. STANDARD OF REVIEW**

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed,*

*Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). A Rule 12(b)(6) motion tests the sufficiency of a complaint; it is not a vehicle to litigate questions of fact. *See Harper v. Lawrence Cty., Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010). However, exhibits attached to the complaint are also properly considered in the 12(b)(6) inquiry. *Weeks v. Wyeth, Inc.*, 120 F. Supp. 3d 1278, 1283 (M.D. Ala. 2015) (citing *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006)).

### III. BACKGROUND

The Federal Republic of Nigeria offers its citizens sponsorship to attend school abroad. (Doc. # 1 ¶ 2.) These sponsorships cover the full cost of attendance: Nigeria foots the bill for the sponsored students' "tuition, fees, health insurance, room and board, textbooks, and miscellaneous personal costs." (Doc. # 1 ¶¶ 2, 4.) A few dozen of these sponsored students ended up at Alabama State University, leading to the dispute before the court today.

Under its arrangement with ASU, Nigeria remitted sponsorship money directly to the University with the proviso that any funds not used for tuition or other fees be disbursed to the sponsored students to cover their sundry personal expenses. (Doc. # 1 ¶ 17.)  Plaintiffs, thirty-seven Nigerian citizens enrolled at Alabama State University (collectively, the "Students" or the "Plaintiff Students"), filed suit on August 25, 2016, claiming that the University wrongfully converted their sponsorship money for its own use.  (Doc. # 1.)  The Students bring four claims against the University: (1) national-origin discrimination in violation of Title VI of the Civil Rights Act of 1964; (2) breach of fiduciary duty in the University's conversion of the sponsorship money; (3) breach of the University's contract with Nigeria, enforceable by the Students due to their status as third-party beneficiaries; and (4) unjust enrichment.

Assuming the truth of the Students' factual allegations, *Resnick*, 693 F.3d 1321–22, the facts of the case are as follows.  After depositing the Students' sponsorship money for the 2013–14 school year in their financial accounts with the University, Alabama State prevented the Students from accessing the money for any purpose other than to repay school expenses.  (Doc. # 1 ¶ 10.)  Not only did the University bar the free spending of the Students' sponsorship money, it allegedly used the Students' financial accounts as a slush fund to pay for expenses unrelated to the Students or their education.  (Doc. # 1 at ¶ 10.)  Sometime around the fall

3

semester of 2014, Alabama State went so far as to empty the Students' accounts of the sponsorship money, purportedly because Nigeria had not yet paid the University for the Students' 2014–15 enrollment. (Doc. # 1 at ¶ 11.) But on its eventual receipt of the sponsorship money, the University continued to withhold the '13–14 sponsorship money and refused to deposit any of the '14–15 money in the Students' accounts. (Doc. # 1 ¶ 12.) Pockets empty, the Students reached out to Kingsley K. KuKu, Special Adviser to the President of the Niger Delta, asking him to right the University's wrongs. (Doc. # 1 ¶ 13.) Mr. KuKu duly wrote the University on May 15, 2015, asking that the credit balances earmarked for the Students' tuition be carried over to help pay for the next semester and that the remaining credit balances be refunded to the Students. (Doc. # 1-1.) The University ignored Mr. KuKu's request. (Doc. # 1 ¶ 14.)

In November of 2015, counsel for the Students wrote the President and Provost of the University, demanding that the Students be given their sponsorship money. (Doc. # 1 ¶ 15.) Two months later, University general counsel wrote back to the Students to inform them that, because "[t]here [wa]s no financial agreement between the University and the [Plaintiff Students]," they would get nothing. (Doc. # 1-3.) Plaintiffs filed suit later that year, but their case was dismissed without prejudice for want of subject-matter jurisdiction. *Jumbo v. Ala. State Univ.*, No.

2:16-CV-312-KS-GMB (M.D. Ala. July 6, 2016). The Students filed a second complaint on August 25, 2016, which is before the court today. (*See* Doc. # 1.)

## IV. DISCUSSION

Before reaching the sufficiency of Plaintiffs' complaint, the analysis begins with the numerous exhibits attached to the parties' briefing. Both parties build their arguments on a pile of letters, emails, declarations, affidavits, and other papers attached to their briefs. (*See generally* Docs. # 9, 14, 17.) In so doing, they aim to litigate factual questions beyond the scope of 12(b)(6). *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701 (11th Cir. 2016) ("The clear rule in this Circuit is that consideration of material falling outside the pleadings converts a motion to dismiss into one for summary judgment.") (citing *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002)). While trial courts may consider matters outside the pleadings on conversion of the motion to dismiss into a motion for summary judgment,[1] the court enjoys near-absolute discretion to take such a procedural detour. 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1366 (3d ed. 2016) ("[F]ederal courts have complete discretion to determine whether or

---

[1] The University's general counsel cites *Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002), for the proposition that these documents "may be considered by the court" even without converting the motion to dismiss into a motion for summary judgment. (Doc. # 17 at 2 n.2.) The citation ends there, but the quoted sentence does not. Rather, it continues that consideration without conversion is proper "*only if* the attached document" meets certain conditions, which are not urged here. *Horsley*, 304 F.3d at 1134 (emphasis added). The court trusts that counsel's misrepresentation of Eleventh Circuit case law is unintentional.

not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."). "A judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings." *Harper*, 592 F.3d at 1232. This is the path the court will follow. Summary judgment should not be entered absent adequate opportunity for discovery. *See Jones v. City of Columbus, Ga.*, 120 F.3d 248, 253 (11th Cir. 1997); *Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988). And, somehow, missing among the mounds of extra-pleading materials is the document at the heart of this matter—the contract between Nigeria and Alabama State. In light of this underdeveloped factual record, the court will consider only the matters in the pleadings and will not convert the motion to dismiss.

Each of the Students' four claims will be discussed in turn.

**A.**   **National-Origin Discrimination**

In the first count of their complaint, the Students allege that the University discriminated against them on account of their national origin, thereby violating Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*. (Doc. # 1, ¶¶ 21–25.) Title VI breaks down into two parts: sections 601 and 602. Section 601 mandates that no person shall "be subjected to discrimination under any program or activity receiving Federal financial assistance" on account of their "race, color, or national

origin." 42 U.S.C. § 2000d. "[T]he Supreme Court has recognized a private cause of action to enforce section 601," *see Burton v. City of Belle Glade*, 178 F.3d 1175, 1202 (11th Cir. 1999), but a plaintiff must prove intentional discrimination to prevail on a section 601 claim, *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). By contrast, section 602 "proscribe[s] activities that have a disparate impact on racial groups," *id.* at 281, and authorizes administrative rulemaking "to effectuate the provisions of § 601," *id.* at 288 (quoting 42 U.S.C. § 2000d-1) (alteration omitted). No private remedy exists for violations of section 602. *Id.* at 293. Although Plaintiffs do not specify whether they seek redress under section 601 or 602 (*see* Doc. # 1 ¶¶ 21–25), as private parties they can only sue to enforce section 601. Therefore, the inquiry is whether Plaintiffs have stated a claim for relief under section 601, 42 U.S.C. § 2000d.

To state a claim under section 601, a plaintiff need only allege intentional discrimination by a federally funded entity. At this early stage in the proceeding, this is a notably light burden. *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 565 (3d Cir. 2002) (noting that 12(b)(6) dismissals of section 601 claims are rarely upheld on appeal). After all, "issues involving state of mind," such as discriminatory intent, involve fact-focused questions that "are often unsuitable for a Rule 12(b)(6) motion to dismiss." *Id.* The Students' complaint clears this low bar.

The Students have alleged that "ASU receives money and/or transfers of goods from the United States federal government" (Doc. # 1 ¶ 3), showing that the University is a federally funded entity. As for intentional discrimination, the Plaintiff Students allege that the University confiscated their sponsorship money, refused to return the funds even after Mr. KuKu's letter, and that the University properly disburses scholarship money it receives for its non-Nigerian students. (Doc. # 1 ¶¶ 12, 14, 18.) The paucity of on-point Eleventh Circuit precedent notwithstanding, trial courts in other circuits have declined to dismiss Title VI claims founded on lesser allegations. *E.g.*, *Rubio v. Turner Unified Sch. Dist. No. 202*, 453 F. Supp. 2d 1295, 1306 (D. Kan. 2006) (finding plaintiff had stated a claim under section 601 by alleging that the defendant school system acted intentionally in enacting an English-only policy). The Students have alleged that the University employs a scholarship/sponsorship disbursement policy that privileges enrollees from other nations over enrollees from Nigeria; this disparate impact is enough to show discriminatory intent at the 12(b)(6) stage.[2] Therefore, the Students' Title VI claim survives 12(b)(6) scrutiny.

---

[2] To be sure, looking at the disbursement policy's disparate impact seems to run against the Supreme Court's ruling that no private cause of action exists to enforce the disparate-impact regulations authorized by section 602. However, the Court has firmly stated that impact informs the inquiry into intent. "[T]he impact of an official action is often probative of why the action was taken in the first place since people usually intend the natural consequences of their actions." *Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 487 (1997) (citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)). Therefore, the court looks to the allegations evincing

**B.     Breach of Fiduciary Duty**

Under Alabama law, a plaintiff must establish three elements to recover for breach of a fiduciary duty: "(1) the existence of a fiduciary duty between the parties; (2) the breach of that duty; and (3) damages suffered as a result of the breach." *Regions Bank v. Lowrey*, 101 So. 3d 210, 219 (Ala. 2012) (citing *Hensley v. Poole*, 910 So. 2d 96, 106 (Ala. 2005)).  The Students have alleged the second two elements of this cause of action:  Assuming that it owed a fiduciary duty to the Students, the University breached that duty by failing to properly handle the sponsorship money. (Doc. # 1 ¶¶ 10–12, 16–17.)  And the Students were damaged by being denied the use of money that was properly theirs—or at least they so allege.  (Doc. # 1 ¶¶ 14, 17.)  The 12(b)(6) inquiry therefore hinges on whether the University owed the Plaintiff Students a fiduciary duty.

Although no Alabama case law has recognized a general fiduciary duty owed by universities to their students, a confidential relationship conceivably may have arisen between Alabama State and the Plaintiff Students.  Alabama law does not restrict "[t]he fiduciary relation . . . to such confined relations as trustee and beneficiary, partners, principal and agent, guardian and ward, managing directors and corporation, etc." *Line v. Ventura*, 38 So. 3d 1, 12 (Ala. 2009) (quoting *Morgan*

---

disparate impact of Alabama State's scholarship disbursement policy as indicia of the University's discriminatory intent.

*Plan Co. v. Vellianitis*, 116 So. 2d 600, 603 (Ala. 1959)). Instead, the fiduciary duty attaches to "all persons who occupy a position out of which the duty of good faith ought in equity and good conscience to arise." *Id.* (quoting *Morgan Plan Co.*, 116 So. 2d at 603). As described in an earlier case, a fiduciary duty arises in "all cases in which confidence is reposed by one party in another, and the trust or confidence is accepted under circumstances which show that it was founded on intimate personal and business relations between the parties, which gave the one advantage or superiority over the other." *Cannon v. Gilmer*, 33 So. 659, 659 (Ala. 1903). This is necessarily a fact-intensive inquiry that looks beyond formal labels and titles. *See, e.g.*, *Hopkins v. Hopkins*, 983 So. 2d 382, 391 (Ala. Civ. App. 2007) (declining to find a confidential relationship between parents and son). While no court has distilled the inquiry into a factor- or element-based analysis,[3] the common thread

---

[3] The Alabama judiciary has spilled plenty of ink on this question. As defined by the state supreme court in 2009, a confidential or fiduciary

> relationship is one in which one person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is reposed and accepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another.

seems to be one party's dependence on or subjugation by the other. *E.g.*, *Jordan v. Mitchell*, 705 So. 2d 453, 461 (Ala. Civ. App. 1997) (holding that unmarried cohabitants were not in a confidential relationship, because the female cohabitant did not rely or depend on the promises or financial expertise of the male cohabitant).

Confined by the pleadings and the limited record before it, the court will assume the existence of a fiduciary relationship between the University and the Students. The Students allege that the University held their sponsorship money and limited its use to certain school expenses. (Doc. # 1 ¶ 14.) Such a practice places the Students' purse strings firmly in the grasp of the University, giving it the sort of "overmastering influence" over the Students that is a hallmark of a fiduciary relationship. *Line*, 38 So. 3d at 13. The University's control over the Students' sponsorship money similarly puts the Students into a position of "weakness, dependence, or trust," and opens the door for the University to obtain "an unfair advantage" by exercising "dominion" over the Students.[4] *Id.* Moreover, because

---

*Line*, 38 So. 3d at 13 (internal quotation marks omitted) (quoting *Bank of Red Bay v. King*, 482 So. 2d 274, 284 (Ala. 1985)). Thus, rather than looking to fixed elements or labeled relationships, the court asks whether the University occupied a position of dominance and trust over the Students.

[4] The University argues that "the lack of decided caselaw in this area . . . shows there is no recognized claim that a university has a fiduciary obligation toward its students." (Doc. # 9 at 6.) For one, this argument mistakes absence of consensus for consensus of absence and ignores the growing body of commentators advocating for such a duty. *See, e.g.*, Kent Weeks & Rich Haglund, *Fiduciary Duties of College and University Faculty and Administrators*, 29 J.C. & U.L. 153, 159 (2002) (arguing that "the necessary elements [of a fiduciary relationship] can be established" in the campus context). But more importantly, the University's reasoning here implies that it occupies a normal academic role in relation to the Plaintiff Students. This is not so: The Students allege that the University exercised total control over their sponsorship money,

Plaintiffs' other claims survive, retaining the claim for breach of fiduciary duty will not increase the burden of discovery. And, it should be noted, the University remains free to argue against the existence of a confidential relationship at the summary-judgment stage. The Students have therefore stated a claim for breach of fiduciary duty.

C.   **Breach of Contract for the Benefit of a Third Party**

"To recover under a third-party beneficiary theory, the complainant must show: 1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; 2) that the complainant was the intended beneficiary of the contract; and 3) that the contract was breached." *Sheetz, Aiken & Aiken, Inc. v. Spann, Hall, Ritchie, Inc.*, 512 So. 2d 99, 101–02 (Ala. 1987) (citations omitted). Because the Students have plausibly alleged facts in their complaint that satisfy these elements, the University's motion to dismiss will be denied.

The Students have alleged that Alabama State and Nigeria intended to bestow a benefit—namely, the academic sponsorship—on the Plaintiff Students. (Doc. # 1 ¶¶ 2, 4.) As the intended recipients of the sponsorship money, the Plaintiff Students were the intended beneficiaries of the contract. (Doc. # 1 ¶ 3.) And although the sponsorship contract is not before the court—the parties apparently decided that their

---

giving Alabama State a central role in the Plaintiff Students' finances—a role the University does not play for its other scholarship recipients. (*See* Doc. # 1 ¶ 18.) The confused state of the Alabama case law therefore does not compel dismissal of this claim.

various letters, declarations, and other extrinsic evidence were more worthy of judicial consideration—the Students have alleged that the University failed to turn over monies that they were owed, which would presumably breach the contract. (Doc. # 1 ¶¶ 12–13, 17.) The Students have therefore stated a claim to recover as the third-party beneficiaries of the sponsorship contract between Alabama State and Nigeria.

### D.  Unjust Enrichment

Alabama courts deem unjust "[t]he retention of a benefit" where "(1) the donor of the benefit acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship." *Mantiply v. Mantiply*, 951 So. 2d 638, 654–55 (Ala. 2006) (quoting *Welch v. Montgomery Eye Physicians, P.C.*, 891 So. 2d 837, 843 (Ala. 2004)) (alterations and internal quotation marks omitted). "In the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been *unjustly* enriched." *Id.* (quoting *Welch*, 891 So. 2d at 843) (emphasis in original). The Students have successfully alleged a breach of fiduciary duty by the University, which suffices to show the sort of "unconscionable conduct" required by Alabama law. Therefore, Plaintiffs have stated a claim for unjust enrichment that survives Rule 12(b)(6) scrutiny.

## V.  CONCLUSION

The factual allegations in the Students' complaint state a claim on all four counts.  Accordingly, it is ORDERED as follows:

1. The University's motion to dismiss (Doc. # 9) is DENIED; and

2. The Students' motion to strike (Doc. # 14) is DENIED as moot.

DONE this 23rd day of January, 2017.

                                          /s/ W. Keith Watkins
                            CHIEF UNITED STATES DISTRICT JUDGE